**Denver JONES and Cecilia Jones,
Appellees,**

v.

**ROCK ISLAND IMPROVEMENT COM-
PANY, Appellant.**

**No. 45505.**

Court of Appeals of Oklahoma,
Division No. 1.

March 20, 1973.

Rehearing Denied April 17, 1973.

John B. Baumert, Jones & Jones, William S. Horton, McAlester, for appellees.

Donald R. Wilson, Oklahoma City, for appellant.

ROMANG, Judge:

Plaintiffs, Denver Jones and Cecilia Jones, filed this action against the defendants, Rock Island Improvement Company, a corporation, and Amoco Production Company, a corporation, to quiet title to the oil, gas, and other minerals, except coal and asphalt, lying in and under certain lands owned by plaintiffs in Pittsburg County, Oklahoma.

Rock Island acquired title to the lands involved by patent from the Choctaw and Chickasaw Nations dated October 30, 1925 and November 4, 1925. The patent contained the following:

"..... reserving, saving and excepting from this conveyance all coal and asphalt in, upon and underlying said land, ....."

Rock Island conveyed the land to Myrtle Jones by Quit Claim Deed dated December 29, 1939, which reads in pertinent part as follows:

" ..... does hereby quitclaim, grant, bargain, sell and convey unto the said party of the second part all its right, title, interest, estate, and every claim and demand, both at law and in equity, in and to all of the following described property, situated in Pittsburg County, State of Oklahoma:

"All of the surface of (followed by the legal descriptions);

"And excepting and reserving the shale pile located thereon, with the right of ingress and egress to remove said shale at anytime,

together with all and singular the hereditaments and appurtenances thereunto belonging."

Amoco acquired oil and gas leases on the lands dated May 3, 1961, from Rock Island, and the lands were included in Section drilling and spacing units on which commercially productive gas and condensate

wells were drilled in 1967. Amoco is not involved in this appeal.

In the trial of the case before the court without a jury, the trial judge found in part as follows:

"The Court further finds that under the terms of said Act of Congress, and patent issued pursuant thereto the defendant, Rock Island Improvement Company, a corporation, acquired the surface to said lands, except coal and asphalt; that under the terms of said act, surface is defined to include the entire estate, save coal and asphalt reserved.

"The Court further finds that under the terms of said Act of Congress and segregated coal land patent issued thereunder, all reservations, restrictions and covenants and conditions contained in said patent under which the surface was sold shall run with the land and bind the grantee and grantees therein, their successors, representatives and assigns, and that the defendant, Rock Island Improvement Company, was bound thereby."

The trial court decreed that the Quit Claim Deed from Rock Island to Myrtle Jones, conveyed all of the estate, including oil, gas and other minerals except coal and asphalt.

Rock Island has appealed and its first proposition is:

"The Act of February 19, 1912 (37 Stat. 67) does not control the conveyance from Rock Island Improvement Company to Myrtle Jones."

Rock Island contends that the provisions of the act are limited to the sales and procedures under the act itself; that the definition of "surface" was for convenience in drafting; and that there are no provisions in the act, expressed or implied, to the effect that the definition should be construed as a covenant running with the land.

Plaintiffs contend in their brief as follows:

".....it is our contention that the quit claim deed from Rock Island to Myrtle Jones.....conveying the surface and excepting and reserving the shale pile located on the lands conveyed, operates to convey the oil and gas by virtue of the statute of the act providing for a covenant which clearly binds the Rock Island in the absence of express reservation."

Black's Law Dictionary, Revised Fourth Edition, contains the following:

"COVENANT RUNNING WITH LAND. A covenant which goes with the land, as being annexed to the estate, and which cannot be separated from the land, and transferred without it. * *

"A covenant is said to run with the land, when not only the original parties or their representatives, but each successive owner of the land, will be entitled to its benefit, or be liable (as the case may be) to its obligation......One which touches and concerns the land itself, so that its benefit or obligation passes with the ownership. Local Federal Savings & Loan Ass'n of Oklahoma City v. Eckroat, 186 Okl. 660, 100 P.2d 261, 262."

The Act of Congress of February 19, 1912, provides in part as follows:

".   .   . That the Secretary of the Interior is hereby authorized to sell .   .   . the surface, leased and unleased, of the lands of the Choctaw and Chickasaw Nations in Oklahoma segregated and reserved by order of the Secretary of the Interior, dated MARCH 24, 1903, authorized by the Act approved JULY 1, 1902. The surface herein referred to shall include the entire estate, save the coal and asphalt reserved.

*      *      *      *      *      *

"All conveyances made under this act shall convey the fee in the land with the reservation to the Choctaw and Chickasaw Tribes of Indians to the coal and asphalt in such lands, and shall contain a clause reciting and containing the reservations, restrictions, covenants and conditions under which the property was sold as herein provided, and such conveyance shall specifically provide that

the reservations, restrictions, covenants and conditions therein contained shall run with the land and bind the grantees, successors, representatives and assigns of the purchaser of the surface."

"All conveyances made under this act" refers to the Government Patents to be issued thereunder, and that they shall reserve "the coal and asphalt in such lands."

It is undisputed that Rock Island had the right to convey the surface rights separate and apart from the oil, gas and other minerals.

The real issue is whether the word "surface" in the Quit Claim Deed, was subject to the meaning defined in the Act of Congress of 1912.

Plaintiffs assert in their brief as follows:

"We agree that the ordinary deed conveying the surface does not operate to convey the oil, gas and other minerals. This was not an ordinary type of conveyance which specified the surface, but one which under the Act of Congress the surface was defined to include the oil, gas and other minerals save coal and asphalt. *This is the distinction between this deed and the ordinary deed specifying surface but not involving segregated coal lands.*"

Plaintiffs cite as principal authority for their contentions, an unreported Federal District Court case, Greenwood v. Pacola, et al., No. 2872–Civil, Eastern District of Oklahoma. In that case Pacola had taken 67.04 acres of "surface" as provided by the Act of Congress, in order to mine coal. The court therein instructed the arbitrators that in taking the surface, Pacola had "acquired the entire estate in said land save

and except coal and asphalt, which still belongs to the United States."

We do not pass upon the correctness of the Federal Court interpretation of "surface" which was taken under the express provisions of the 1912 Act of Congress. The case at bar is distinguishable in that it involves a voluntary conveyance of surface for the sum of $4.00 per acre. The Quit Claim Deed makes no reference to the Act of Congress or the Patent, nor the definition therein.

In the instant case the subject of the conveyance was "all of the surface" with the exception of "the shale pile located thereon." It was not necessary for Rock Island to except or reserve the oil, gas and other minerals which the words of grant did not include or convey.

We find no ambiguity in the deed, and we further find that it did not convey any of the oil, gas and other mineral rights.

The definition of "surface" in the Act of Congress, referred to the meaning of "surface" as it would be used in the Government Patents conveying the lands, and, according to the Federal District Court, to the acquiring of "surface" under the terms of the Act for coal mining purposes.

We find no express or implied basis for extending the Congressional definition to apply to subsequent conveyances of either the surface or minerals of said lands, except that a patentee could not convey coal and asphalt which he did not own.

The judgment of the trial court is reversed, and this case is remanded with direction to enter judgment for Rock Island on its cross-petition in accordance with the holding herein.

Reversed and remanded.

BAILEY, P. J., and BOX, J., concur.